**COMMERCIAL UNION INSURANCE CO., Plaintiff,**

v.

**CANNELTON INDUSTRIES, INC., et al., Defendants.**

No. 2:92–CV–111.

United States District Court, W.D. Michigan, N.D.

March 28, 1994.

14. Reilly's brief also concedes the Court's discretion to remand in lieu of dismissal (Reilly's Reply Brief at 15).

Carole D. Bos, Kevin J. O'Dowd, Buchanan & Bos, Grand Rapids, MI, for Commercial Union Ins. Co.

Frederick J. Dindoffer, Bodman, Longley & Dahling, Detroit, MI, Gale Reddie Lea, Jackson & Kelly, Charleston, WV, for Cannelton Industries, Inc.

James K. O'Brien, James K. O'Brien, PC, Bloomfield Hills, MI, for American Home Assur. Co., Lexington Ins. Co., New Hampshire Ins. Co.

Michael D. Wade, Bremer, Wade, Nelson, Mabbit & Lohr, Grand Rapids, MI, for Continental Ins. Co.

Michael G. Vartanian, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for Dominion Ins. Co. Ltd.

Harold E. Fischer, Jr., Early, Lennon, Fox, Thompson, Peters & Crocker, Kalamazoo, MI, for First State Ins. Co.

Stephen M. Kelley, Timothy James Clarke, Stephen M. Kelley, PC, Detroit, MI, for St. Paul Fire & Marine Ins. Co., St. Paul Surplus Lines Ins. Co.

Lynn L. Lower, Cheatham, Acker & Sharp, PC, West Bloomfield, MI, for Affiliated FM Ins. Co.

Reynolds A. Brander, Jr., Cholette, Perkins & Buchanan, Grand Rapids, MI, Geoffrey James Alexander, Manta & Welge, Philadelphia, PA, for Allstate Ins. Co. of Canada.

John H. Dise, Jr., Farber, Downs, Dise & Irving, Detroit, MI, for Atlanta Intern. Ins. Co.

Timothy F. Casey, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Bituminous Cas. Corp.

## OPINION

QUIST, District Judge.

Commercial Union filed an Amended Complaint for Declaratory Relief on November 18, 1993, in which it named approximately fifty of Cannelton's insurers as additional defendants with Cannelton. Cannelton responded by filing motions to (1) realign and drop parties, (2) dismiss for lack of subject matter jurisdiction, (3) dismiss for lack of personal jurisdiction, or (4) stay the proceedings. Commercial Union agrees that the parties should be realigned, but it proposes an alignment with Cannelton as plaintiff. Commercial Union opposes all the other motions.

Commercial Union filed a Second Amended Complaint on January 3, 1994, in which it refined the descriptions of several of the parties but did not add any parties or alter the substantive claims. Cannelton has moved to strike the Second Amended Complaint. That motion will be denied and Cannelton's motion will be assessed by reference to the Second Amended Complaint.

### DISCUSSION

#### Motion to Realign and Drop Parties

In accordance with *United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 132 F.R.D. 660 (W.D.Mich.1990), *aff'd*, 955 F.2d 1085 (6th Cir.1992), the parties in the instant action should be realigned to correspond to the alignment of parties on the principal issue in dispute, whether Cannelton's insurers are obligated to indemnify Cannelton for the clean-up of a hazardous waste site near Sault Ste. Marie. In *Thomas Solvent*, an insurer, USF & G, instituted suit against the insured, Thomas Solvent, and its other insurers. The district court realigned the parties on the grounds that the principle issue in the dispute was what the insurers owed the insured. 132 F.R.D. at 667–68. The realignment destroyed diversity and the action was dismissed. On appeal, the Court of Appeals for the Sixth Circuit affirmed the realignment. 955 F.2d at 1091. It held that the decision of the Supreme Court in *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), "requires that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the origi-

nal alignment." *Thomas Solvent*, 955 F.2d at 1089.

Cannelton and Commercial Union agree that the parties should be realigned, as required by *Thomas Solvent*, but they disagree as to who should be the plaintiff. Cannelton requests that this Court realign the parties by making all of the insurers co-plaintiffs with Commercial Union and dropping any insurer that declines to voluntarily become a plaintiff. Commercial Union requests that the parties be realigned by deeming Cannelton the plaintiff and all of the insurers defendants. It argues that Cannelton is the most appropriate plaintiff because Cannelton is seeking to recover from the insurers.

An issue connected with realignment is whether Algoma Steel Corporation Ltd. (Algoma), a Canadian company, can be added as a third party defendant without destroying diversity jurisdiction. Insurers St. Paul Fire and Marine Insurance Company and St. Paul Surplus Lines Insurance Company (collectively, St. Paul) wish to include Algoma as a party because Algoma owned Cannelton until 1991 and is an insured on policies which Cannelton claims entitle it to indemnity from St. Paul.

### Realigned Parties' Roles

■ Although Commercial Union asserts that it could be deemed a defendant and Cannelton a plaintiff without requiring that Cannelton take on the role of plaintiff, a relabeling of this magnitude suggests a change in roles. The cases that address realignment of parties generally have not engaged in wholesale relabeling of all the parties but, instead, have merely determined that some of the defendants should be considered plaintiffs for jurisdictional purposes in addition to the primary plaintiff. *See City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (defendant realigned with plaintiff); *United States Fidelity and Guar. Co. v. Thomas*

*Solvent Co.*, 132 F.R.D. 660 (W.D.Mich.1990), *aff'd*, 955 F.2d 1085 (6th Cir.1992) (defendant insurers aligned with plaintiff insurer); *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862 (3d Cir.1991) (defendant insurers realigned as plaintiff, joining plaintiff insurer); *N.S.N. Int'l Indus. v. E.I. du Pont de Nemours & Co.*, 143 F.R.D. 30, 35 (S.D.N.Y.1992) (if party is joined, it must be aligned with existing plaintiff).

None of these cases has specifically addressed whether a case should be converted from a declaratory judgment action to a suit for damages or whether a primary plaintiff and defendant may be required to switch sides. The only instances in which a defendant has been shifted to the role of primary plaintiff and given responsibility for maintaining the action are where the original plaintiff acted on behalf of a fund or corporation and the fund or corporation was eventually aligned with plaintiff and came to act on its own behalf. *See Mertens v. Kaiser Steel Retirement Plan*, 744 F.Supp. 917, 922–23 (N.D.Cal.1990), *aff'd*, 948 F.2d 1105 (9th Cir. 1991) (new trustee took over action filed on behalf of plan); *Graphic Scanning Corp. v. Yampol*, 677 F.Supp. 256, 257–58 (D.Del. 1988) (new board of directors took over shareholder action on behalf of company); *Solomon v. Buckley*, 86 F.R.D. 464 (E.D.La. 1980) (company took over action); *In re Penn Cent. Sec. Litig.*, 335 F.Supp. 1026, 1042 (E.D.Pa.1971) (realignment and exclusive control granted to company's new directors at their request). The instant case does not fit this model because there is no plaintiff with whom Cannelton shares an interest. Moreover, Cannelton strenuously objects to being made a plaintiff in this Court.[1] It does not seem appropriate to force a declaratory judgment defendant to switch sides with the entity that initiated the suit.

■ Cannelton asserts that, if the defendant insurers are realigned as plaintiffs,

---

1. Commercial Union, in its supplemental brief, cites *Hartford Accident and Indemnity Co. v. Dow Corning Corp.*, No. 93–325788, (Circuit Court of Wayne County, Michigan, September 9, 1993) (Case Management Order), as an example of an instance in which the defendant insured was deemed a plaintiff and all of the insurers desig-

nated defendants "without regard to the ultimate burden of proof." Although the Case Management Order does not state that this rearrangement was done with the agreement of the parties, there is no indication that the parties objected to a complete realignment.

each of the insurers must voluntarily join as plaintiffs or be dismissed. This argument, too, is without merit. The insurers have been included in the suit as defendants and have been or will be served with process. Their realignment as plaintiffs does not force them to be "involuntary plaintiffs." That label is reserved for parties who are forced to join a suit as indispensable parties despite the fact that they are not subject to service of process and thus cannot be in included as defendants. *See* Fed.R.Civ.P. 19; 3A *Moore's Federal Practice* ¶ 19.06. All that is at issue here, as in *Thomas Solvent,* is whether the insurers should be realigned for jurisdictional purposes. Commercial Union's Second Amended Complaint includes a claim against each of the insurers. They are thus in the role of defendants, although they will be considered plaintiffs for jurisdictional purposes. If the insurers include in their answers claims against Cannelton or cross claims against other insurers, they will assume the role of plaintiff with respect to those claims.

### Adding Algoma

■ It does not appear necessary to realign Cannelton as plaintiff in order to include Algoma as a defendant. Algoma can be added as a defendant on one or both of the following grounds—either because there is diversity jurisdiction under 28 U.S.C. § 1332(a)(3) in this instance or because third-party defendants should not be included in the realignment.

Several courts have held that realignment should concern only the initial complaint and should not involve parties added in subsequent pleadings. *See Zurn Indus. Inc. v. Acton Constr. Co.,* 847 F.2d 234, 237 (5th Cir.1988) (district court realignment of parties reversed where court had included cross-claim and counterclaim defendants in the realignment); *Olin Corp. v. Insurance Co. of North America,* 807 F.Supp. 1143, 1148 (S.D.N.Y.1992) (realignment should be based on complaint, not on subsequent pleadings).

Dominion of Canada General Insurance Company (Dominion) submitted a brief, which St. Paul joined, in which it argues that, pursuant to 28 U.S.C. § 1332(a)(3), aliens can be included as additional parties on both sides of a dispute when there is a legitimate dispute and complete diversity between the United States citizens in the action. Section 1332(a)(3) provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties.

Dominion urges this Court to follow *Clark v. Yellow Freight System, Inc.,* 715 F.Supp. 1377 (E.D.Mich.1989) (Duggan, J.), in which the court found diversity jurisdiction over the parties pursuant to Section 1332(a)(3) despite the fact that there were Canadians aligned with both plaintiff and defendant. Plaintiffs Central Transport, Inc. (Central), a Michigan corporation with its principal place of business in Michigan, and Charles Clark, a Canadian citizen and agent for Central, brought the *Clark* action against Yellow Freight Systems, Inc., an Indiana corporation with its principal place of business in Kansas, and Yellow Freight Systems of Ontario, Inc., a Canadian corporation. Plaintiffs sought specific performance of the sale of land in Windsor owned by Yellow Freight. *Id.* at 1377–78. The court quoted extensively from *Samincorp, Inc. v. Southwire Co.,* 531 F.Supp. 1, 2 (N.D.Ga.1980), as follows:

The current diversity statute confers subject matter jurisdiction on the federal courts where the amount in controversy exceeds $10,000 and the controversy is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). The statute does not provide that diversity is destroyed if citizens of foreign states are both plaintiffs and defendants, and one commentator has recognized that "the language of Section 1332(a)(3) is broad enough to allow aliens to be additional parties on both sides of the dispute. Under this interpretation, jurisdiction would exist if a New Yorker, and a Canadian, sued a Californian, and a German, assuming, of course, that there was a

legitimate dispute between the two Americans." C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3604 at p. 610 (1975). *Clark*, 715 F.Supp. at 1378. *See also Goar v. Compania Peruana De Vapores*, 688 F.2d 417, 420 n. 6 (5th Cir.1982) ("§ 1332(a)(3) may also have the effect of retaining federal jurisdiction where there is complete diversity between the United States citizens involved in an action but there are foreign subjects among the parties on both sides"); *K & H Business Consultants Ltd. v. Cheltonian, Ltd.*, 567 F.Supp. 420, 421–24 (D.N.J.1983) (court has jurisdiction pursuant to § 1332(a)(3) where there is legitimate controversy between diverse United States companies in which English companies were joined as additional parties on both sides); Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3604, at 390 ("the language of Section 1332(a)(3) is broad enough to allow aliens to be additional parties on both sides of the dispute").

Cannelton responded by asserting the rule that there must be complete diversity between every plaintiff and every defendant, citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Yet Cannelton did not cite any case in which a court applying Section 1332(a)(3) has held that jurisdiction was lacking when aliens were included as both plaintiffs and defendants in an action in which there was a legitimate dispute between diverse United States citizens. The cases Cannelton cites apply not Section 1332(a)(3) but only Section 1332(a)(1), which provides jurisdiction when the parties are "citizens of different States," and Section 1332(a)(2), which provides jurisdiction if the dispute is between "citizens of a State and citizens or subjects of a foreign state." *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir.1989) (no jurisdiction because one defendant and all plaintiffs were aliens); *F. & H.R. Farman–Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir.1989), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 809 (1990) (considered whether it was necessary to join citizen of Illinois as plaintiff, thereby destroying diversity where defendant was citizen of Illinois); *Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*, 782 F.2d 1064, 1065 (D.C.Cir.1986) (no jurisdiction where both plaintiffs were citizens of Nigeria and a defendant was a citizen of Ghana); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 and n. 4 (3d Cir.1980) (considered jurisdiction only under Section 1332(a)(2)); *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir.1975) (diversity jurisdiction lacking where plaintiff and one defendant were aliens).

■ The Supreme Court recently restated the *Strawbridge v. Curtiss* rule as follows: "the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal." *Newman Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989). The language of Section 1332(a)(3) establishes a requirement of complete diversity between citizens but permits aliens on each side of the dispute as additional parties. Thus, the requirements of the diversity statute can be met with Algoma as a defendant.

*Thomas Solvent* mandates realignment of this action. It is appropriate to align all of the insurers with the plaintiff, Commercial Union, because the primary dispute is between the insurers and Cannelton on the issue of whether the insurers should indemnify Cannelton for the environmental clean up of the Sault Ste. Marie site. Such an alignment should not block St. Paul from adding Algoma as a defendant.

### Motion to Dismiss for Lack of Subject Matter Jurisdiction

Cannelton urges this Court to dismiss Commercial Union's Amended Complaint for lack of subject matter jurisdiction on the grounds that there is not complete diversity between Commercial Union and all of the defendants. Cannelton asserts that First State Insurance Company (First State) is a citizen of the same state as Commercial Union. Plaintiff admits this lack of diversity in its Second Amended Complaint. It states that two of the insurers, First State and Lexington Insurance Company (Lexington), have their principal places of business in Massachusetts, the state where Commercial

Union is incorporated and has its principal place of business.

Cannelton also requests dismissal because plaintiff failed to plead sufficient facts to establish that it has diversity with several other insurer defendants. In the Amended Complaint, plaintiff included several allegations that did not pin down the place of incorporation or the principal place of business of the insurer. The first of these allegations, as an example, stated: "Upon information and belief, Carrier Defendant Allianz International Insurance Company Limited ("Allianz") is a corporation or other business entity existing under one of the United States or some sovereign power or is an individual, underwriting syndicate or other business entity at Lloyd's of London." The Second Amended Complaint altered the allegations regarding the insurers whose place of incorporation and principal place of business were not identified. For example, the allegation regarding Allianz now states: "Upon information and belief, Carrier Defendant Allianz International Insurance Company Limited ("Allianz") is an alien corporation or other business entity and does not have its principal place of business in the State of Massachusetts." The Second Amended Complaint also includes the following allegation: "No Carrier Defendant is incorporated under the laws of the State of West Virginia nor does any Carrier Defendant have its principal place of business in the State of West Virginia."

Although Commercial Union admits that it is a citizen of the same state as First State and Lexington, it argues that this Court should consider whether there is complete diversity between the citizens of the several states only after it has realigned the parties by placing the insurers on one side and Cannelton on the other. In the alternative, plaintiff requests that, if the Court addresses the jurisdictional issue before realigning the parties, it should dismiss First State and Lexington as dispensable parties, pursuant to Fed.R.Civ.P. 21, rather than dismiss the action.

■ The only support Commercial Union provides for its argument that the Court need not concern itself with diversity juris-

diction prior to realignment is the following statement in *Indianapolis v. Chase National Bank*:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."

314 U.S. at 69, 62 S.Ct. at 17. This statement does not, on its face, permit this Court to disregard the issue of subject matter jurisdiction until it has decided to realign the parties.

Commercial Union also argues that its vague statements regarding the place of incorporation and principal place of business of alien insurers is sufficient, particularly since it alleged, as to each, that they are not citizens of Massachusetts or West Virginia. According to Wright & Miller, pleading such facts in the negative can be sufficient or may be cured by amendment. 5 Wright & Miller, *Federal Practice and Procedure:* Civil 2d ¶ 1208, p. 106–09.

■ As a general principal, the court's jurisdiction must be established as a preliminary matter and "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman Green, Inc. v. Alfonzo–Larrain*, 490 U.S. at 830, 109 S.Ct. at 2222. In *Newman Green*, the Supreme Court discussed two exceptions to the rule that jurisdiction is determined when the complaint is filed: amendment of the pleadings and dismissal of dispensable non-diverse parties. *Id.* at 830–32, 109 S.Ct. at 2222. Neither of these exceptions permit the court to disregard the initial alignment of the parties in determining jurisdiction.

■ These exceptions are, however, both appropriate in this instance. First State and Lexington are dispensable non-diverse parties. They should be dismissed pursuant to Fed.R.Civ.P. 21, with leave to join the case as plaintiffs pursuant to Fed.R.Civ.P. 20. The case as a whole need not be dismissed

because two of many dispensable parties are non-diverse.

█ It is also unnecessary to dismiss the case because the citizenship of several of the insurers has been left vague. Commercial Union requests that the Court accept its pleadings as sufficient on the basis of the allegation that none of the remaining defendants are citizens of Massachusetts or West Virginia. To state the citizenship of some of the insurers only in the negative is less than satisfactory, however, in a case of this size and complexity, particularly because Commercial Union states as to each such entity that it "is an alien corporation *or other business entity.*" If Commercial Union has not determined whether the nature of the business entities, some may be partnerships. In a diversity case, it is critical that the type of business entity be identified and, if it is a partnership, that the citizenship of each partner be determined. Some amendment of allegations has already been necessary as additional information came in on insurers. The investigation required to pin down the citizenship of the business entities should be completed at this stage of the process to avoid any awkward surprises at a later stage. Thus, Commercial Union should amend its Second Amended Complaint to fully identify the citizenship of all of the insurers.

### Motion to Dismiss for Lack of Personal Jurisdiction

The motion to dismiss for lack of personal jurisdiction is essentially the same as Cannelton's original motion for dismissal and will be rejected for the reasons stated in this Court's Opinion and Order of July 1, 1993.

### Motion to Stay the Proceedings

█ Lastly, Cannelton moves for a stay of the proceedings, requesting that this Court abstain from hearing this case pending resolution of the West Virginia action. Cannelton initiated the West Virginia action shortly after Commercial Union instituted the instant action. The West Virginia trial court dismissed the action on grounds of *forum non conveniens* on September 28, 1993. Cannelton petitioned for expedited appeal. The West Virginia Supreme Court granted its petition for appeal on March 2, 1994, and ordered that all briefs be submitted by May 9, 1994. Cannelton also argues that this case should be stayed because it is not as comprehensive as the West Virginia action.

When the West Virginia Supreme Court granted leave to petition for appeal, it issued a stay of execution in which it ordered that appellees, the insurers, be "precluded from filing any additional actions against the appellant and/or Algoma Steel Corporation, Limited, n/k/a/ 108668 Ontario Ltd., in the courts of any other state or foreign country with regard to the issues which are the subject of the appellant's complaint in this action, and from proceeding further in *St. Paul Surplus Lines Insurance Company and St. Paul Fire & Marine Insurance Company v. Cannelton Industries, Inc. and Algoma Steel Corporation, Limited,* No 93–0715–CK [50th Circuit Court, Michigan,] in order to permit a decision by this Court upon the application for an appeal." *Cannelton v. Aetna Cas. & Sur. Co.,* No. 22015 (W.Va. Dec. 16, 1993). Although this stay does not specifically restrain this Court from further action, it inhibits the insurers from filing cross-claims against Cannelton or third party claims against Algoma in answer to the Second Amended Complaint and again places at issue concerns of comity and respect for the jurisdiction of the state court.

### CONCLUSION

Considering all of the issues discussed above and considering Cannelton's statement in its brief in support of its motions that a stay pending decision by the West Virginia Supreme Court will not require an extended wait for a decision, this Court will:

1. Deny Cannelton's motion to strike the Second Amended Complaint.

2. Order that the failure of any party to answer the Second Amended Complaint or to file any other pleadings in response to the Second Amended Complaint within the time for response will not be considered a default or waiver of any right.

3. Grant Cannelton's motion to realign the parties for jurisdictional purposes and

align all of the defendant insurers with plaintiff Commercial Union.

4. Dismiss First State and Lexington as defendants for lack of diversity, without prejudice to their joinder as plaintiffs pursuant to Fed.R.Civ.P. 20.

5. Order that this matter will be stayed pending a decision on Cannelton's appeal to the West Virginia Supreme Court.

6. Direct Commercial Union to amend its Second Amended Complaint to fully identify the citizenship of each defendant insurer if this action proceeds in this Court.

An Order consistent with this Opinion will be entered.